**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOSEPH EGBEBIKE,

    Plaintiff,

vs.                                                      Case No. 3:13-cv-865-J-34MCR

WAL-MART STORES EAST, LP,
a foreign limited partnership, licensed to
do business in the State of Florida, and
INTEX RECREATION CORP.,
a foreign corporation,

    Defendants.
_____

## ORDER

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Damages (Doc. 17; Motion) filed on September 24, 2013. In the Motion, Defendants Wal-Mart Stores East, LP ("Wal-Mart"), and Intex Recreation Corp. ("Intex") (collectively, "Defendants") request that the Court dismiss the Amended Complaint for Damages (Doc. 13; Amended Complaint) pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)). Plaintiff Joseph Egbebike ("Egbebike") filed a response in opposition to the Motion on December 5, 2013. See Plaintiff's Response to Defendant's [sic] Motion to Dismiss Plaintiff's First Amended Complaint for Damages (Doc. 24; Response). With leave of Court, see Order (Doc. 26), Defendants filed a reply on December 31, 2013, see Defendants' Reply to Plaintiff's Response to Motion to Dismiss First Amended Complaint (Doc. 27; Reply). Accordingly the Motion is fully briefed and ripe for review.

### I.     Background[1]

On or before October 17, 2010, Egbebike purchased an Intex air mattress at a Wal-Mart store in Jacksonville, Florida. Amended Complaint ¶¶ 3-5. That same day, Egbebike tried out the inflated air mattress. Id. ¶ 6. As Egbebike "attempted to get up, the [air mattress] suddenly popped, producing a large hole, and it collapsed." Id. "The sudden collapse caused [Egbebike] to fall to the ground and sustain injuries." Id.

On April 26, 2013, Egbebike initiated this action by filing a three count Complaint for Damages against Defendants in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida (Doc. 2; Complaint). Intex removed the case to this Court on July 18, 2013, asserting that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because it is an action between citizens of different states and the matter in controversy exceeds $75,000. See Notice of Removal (Doc. 1; Notice).[2] After Defendants filed Defendants' Motion to Dismiss Plaintiff's Complaint for Damages pursuant to Rule 12(b)(6) (Doc. 4; First Motion to Dismiss), with leave of Court, see Order (Doc. 12), Egbebike filed the Amended Complaint. In Count One of the Amended Complaint, Egbebike asserts a claim for strict products liability against Intex as the designer or manufacturer of the air mattress and against Wal-Mart as the retailer of the air mattress. Amended Complaint ¶¶ 7-12. In Count Two of the Amended Complaint, Egbebike asserts a claim for breach of express

---

[1] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint, and may well differ from those that ultimately can be proved.

[2] Intex represented that its co-defendant, Wal-Mart, consented to removal. Notice ¶ 15.

warranty against Wal-Mart, id. ¶¶ 13-17, and in Count Three of the Amended Complaint, Egbebike asserts a claim for breach of implied warranty of merchantability against Wal-Mart, id. ¶¶ 18-22.

## II.     Standard of Review

In ruling on a motion to dismiss, brought pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372

F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680-81. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III. Analysis

#### A. Count One: Strict Products Liability

Under Florida law, there are three elements to a strict products liability claim: "(1) a relationship between the defendant and the product; (2) a defect which caused the product to be unreasonably dangerous; [and] (3) causation between the defect and the harm suffered by the user." Bailey v. Janssen Pharmaceutica, Inc., 288 F. App'x 597, 607 (11th Cir. 2008). Products may suffer from three different types of defects: a design defect, a manufacturing defect, or an inadequate warning. Jennings v. BIC Corp., 181 F.3d 1250, 1255 (11th Cir. 1999).

Defendants argue that Egbebike has failed to state a cause of action for strict liability because the Amended Complaint "remains devoid of any facts advising Defendants of how Plaintiff alleges that the product was defective and unreasonably dangerous." Motion at 6. Specifically, Defendants assert that the Amended Complaint is deficient because it fails to identify the "product at issue" beyond describing it as an air mattress, the "portion" or

"component" of the air mattress that was purportedly defective, and how any portion of the air mattress was defective. Id. In response, Egbebike asserts that he has "succeeded in pleading that a defect existed in the air mattress because an air mattress does not suddenly pop and produce a large hole when being used properly, unless the air mattress contained a defect." Response at 4.

Upon review of the Amended Complaint, the Court determines that Egbebike has sufficiently alleged a claim of strict products liability against Defendants. As to the first element, Egbebike has alleged a relationship between Defendants and the product because he asserts that Intex designed or manufactured the air mattress, and that Wal-Mart sold the air mattress to him. Amended Complaint ¶¶ 9, 11. Egbebike has also sufficiently alleged "a defect which caused the product to be unreasonably dangerous." See Bailey, 288 F. App'x at 607. Egbebike asserts that as he was attempting to get up from the inflated air mattress, "the product suddenly popped, producing a large hole, and it collapsed." Amended Complaint ¶ 6. Defendants argue this allegation "does not advise the Court or Defendants of the defect that is at issue." Motion at 7-8. However, this argument is without merit. Egbebike's allegation sufficiently identifies the source of the defect such that Defendants can frame a responsive pleading directed at a defect in either the design or manufacture of the air mattress that caused it to pop, producing a hole which caused the product to suddenly collapse. See Bailey, 288 F. App'x at 608.

Notably, both Egbebike and Defendants rely on Bailey v. Janssen Pharmaceutica, Inc., 288 F. App'x 597 (11th Cir. 2008) in support of their arguments. In Bailey, the decedent had been prescribed a fentanyl transdermal skin patch that was supposed to deliver the drug

to its wearer over a seventy-two hour period. Id. at 599-600. The court found that the plaintiff had alleged several possible defects existing at the time the decedent used the patch which identified the source of the defect, namely that there was "a leak in the protective lining and functional layers, which caused the product to dispense its medication at a dangerous and lethal rate." Id. at 607-08. Similarly, here, Egbebike has identified the source of the air mattress's defect: that the air mattress popped and collapsed. Defendants assert that the pleadings in Bailey described "what part of the medicinal patch failed—the layers of the patch[,]" whereas Egbebike provides no such factual details. Reply at 3. However, in describing the allegations in Bailey, one court noted that "the complaint basically alleged that some unidentified part of the patch had caused overly large amounts of fentanyl to be dispensed at once, thereby resulting in the decedent's death." Hosler v. Alcon Labs., Inc., No. 12-60025-CIV, 2012 WL 4792983, at *6 (S.D. Fla. Oct. 9, 2012). This pleading is no more specific than Egbebike's allegations.

Additionally, Egbebike and Defendants cite Krywokulski v. Ethicon, Inc., No. 8:09-CV-980-T-30MAP, 2010 WL 326166 (M.D. Fla. Jan. 21, 2010). In Krywokulski, the plaintiff's surgeon installed a Proceed Surgical Mesh Hernia Patch to repair the plaintiff's ventral hernia. Id. at *1. The court found that by pleading that "the defective patches delaminated and/ or malfunctioned, thus making the patches unsafe and dangerous for use[,]" the plaintiff had "alleged the existence of a product defect as well as providing facts indicating the presence of a product defect." Id. at *2, *3. In the Response, Egbebike quotes extensively from Krywokulski for the proposition that at the pleading stage, a plaintiff does not have to specify whether the alleged defect was due to a product's design or to its manufacture.

Response at 2-3.  However, Defendants do not argue that Egbebike must now specify whether his strict liability claim is based on a design defect or manufacturing defect. Rather, Defendants assert that whereas in Kyrwokulski, "there was at least a minimal description of the mechanism of failure hinting at the nature of the defect[,]" because Egbebike does not specify which part of the air mattress popped, Egbebike's allegations are comparatively lacking.  Reply at 2.  However, Egbebike's allegations are at least as specific as the plaintiff's allegations in Krywokulski: in the instant action, the alleged "mechanism of failure" was that the air mattress popped, producing a hole which caused the product to collapse.  What specifically caused the air mattress to pop is a question appropriately left for the discovery portion of this case.

Defendants also cite Hosler v. Alcon Labs., Inc., No. 12-60025-CIV, 2012 WL 4792983 (S.D. Fla. Oct. 9, 2012), and Brown v. Skechers, U.S.A., Inc., No. 6:09-cv-746-Orl-35GJK, 2009 WL 3157677 (M.D. Fla. Sept. 28, 2009) in support of the Motion.  In Hosler, the court found that the plaintiff stated a claim for strict liability by alleging that post-surgical eye drops "impeded epithelial healing and presented an unreasonable risk of corneal scarring[,]" despite the fact that the plaintiff did "not set forth the precise chemical, biological, or other process by which [the eye drops] allegedly cause[d] corneal scarring." 2012 WL 4792983, at *5-*7. In Brown, the court found that the plaintiff stated a claim for strict liability by alleging that "[t]he defective condition was the failure of the rollers on the skate to remain in place such that the rollers disengaged [and] rotated.'"  2009 WL 3157677, at *2 (alteration in original). Defendants cite Hosler and Brown for the proposition that "[c]ourts denying dismissal of strict liability claims routinely note a description of the actual defect at issue (even where the

specific cause of the defect is not alleged) not just a bald allegation that the product was defective." Reply at 3.

Here, as in Hosler and Brown, the Amended Complaint provides a sufficient description of the alleged defect, and Egbebike's pleadings are not simply "bare legal conclusions." Cf. Gomez v. Pfizer, 675 F. Supp. 2d 1159, 1163 (S.D. Fla. 2009) (finding that the plaintiff failed to plead any "factual allegations suggesting what was in fact defective about the products" where the complaint simply alleged that the "products were 'defectively designed and/or manufactured because [their] intended use resulted in a substantial and unreasonable likelihood of causing Stevens–Johnson syndrome, which rendered [them] unreasonably dangerous for [their] intended use'") (alteration in original). Although Egbebike's allegations are brief and straightforward, an inflatable air mattress is not a mechanically complicated product. He alleges that upon proper inflation, the air mattress popped. Like the impediment to healing in Hosler, or the failure of the rollers in Brown, the allegation of a failure to hold proper inflation is sufficient. Egbebike need not allege the mechanical or other process which caused such failure. Accordingly, the second element of Egbebike's strict liability claim is sufficiently pled. And turning to the last element of a strict liability claim, the Court finds that Egbebike has alleged causation between the defect and the harm suffered because he asserts that the air mattress's "sudden collapse caused [him] to fall to the ground and sustain injuries." Amended Complaint ¶ 6.

Defendants also assert that because Egbebike fails to identify the brand or model of the product in the Amended Complaint, other than describing it as an "air mattress," dismissal is warranted. Motion at 6, 8 & n.1. However, Defendants cite no authority in the Motion or

-8-

Reply to support this assertion, and the Court, in its independent research, has found no authority requiring such specificity. "It is well established under Florida law and elsewhere that identification of the product that caused the harm as the one sold or manufactured by the defendant is an essential element of traditional tort law." Pulte Home Corp., Inc. v. Ply Gem Indus., Inc, 804 F. Supp. 1471, 1484-85 (M.D. Fla. 1992). Egbebike has sufficiently alleged that Intex designed or manufactured the air mattress and that Wal-Mart sold him the air mattress. Amended Complaint ¶¶ 9, 11. At this stage, he is not required to further identify the product. See Erickson, 551 U.S. at 93 (stating that the complaint need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'") (quoting Twombly, 550 U.S. at 555). Accordingly, Egbebike's allegations are sufficient to state a claim for strict liability that is plausible on its face. As such, as to Count One, the Motion is due to be denied.

### B. Count Two: Express Warranty

To state a claim for breach of express warranty under Florida law, "a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty." Jovine v. Abbott Labs., Inc., 795 F. Supp. 2d 1331, 1340-41 (S.D. Fla. 2011) (citing Dunham-Bush, Inc. v. Thermo-Air Serv., Inc., 351 So.2d 351, 353 (Fla. 4th DCA 1977)). Florida Statutes section 672.313 provides in relevant part that

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

FLA. STAT.§ 672.313.

Egbebike alleges that Wal-Mart "represented to Plaintiff, Mr. Egbebike, that the Product was free from defect, which representation formed a part of the basis of the bargain and, pursuant to Florida Statutes § 627.313, created an express warranty." Amended Complaint ¶ 14. Additionally, Egbebike alleges that "[o]n the date that Plaintiff, Mr. Egbebike purchased the Product, it was defective and; thus, Defendant, Wal-Mart, breached the warranty" and that "[w]ithin a reasonable time after Plaintiff, Mr. Egbebike, learned of the breach, Plaintiff notified Defendant, Distributor, of the breach." Id. ¶ 15-16. Egbebike also alleges that "Defendant's breach of warranty caused Plaintiff, Mr. Egbebike, to suffer damages[.]" Id. ¶ 17.

Defendants[3] assert that Egbebike fails to state a claim for breach of express warranty because he does not "allege an 'affirmation of fact or promise' or 'description of the goods' or 'sample' that Wal-Mart allegedly made or relied on in making a sale to Plaintiff." Motion at 9. Additionally, Defendants argue that Egbebike's pleadings amount to a "bald, conclusory allegation . . . unadorned by any factual reference[.]" Id.

In his Response, Egbebike "concedes the issue raised by Defendant" in the Motion with regard to his claim of breach of express warranty and "withdraws" this claim. Response

---

[3] Although the Motion is filed by both Defendants, only Wal-Mart is named as a Defendant in Count Two.

at 4. Indeed, upon review, the Court determines that Egbebike has failed to allege any express written or oral statements by Wal-Mart which would create an express warranty. See Llado-Carreno v. Guidant Corp., No. 09-20971-CIV, 2011 WL 705403, at *4 (S.D. Fla. Feb. 22, 2011) (finding that the plaintiff failed to state a claim for breach of express warranty "because he neither alleges any express written or oral statements made by [the defendant] about the performance or operation of his [defibrilator], nor any deviation in the operation of his [defibrilator] from what was promised in any such statements"). Accordingly, Count Two of the Amended Complaint is due to be dismissed.

### C.     Count Three: Implied Warranty of Merchantability

"A warranty that 'goods shall be merchantable'—i.e., 'fit for the ordinary purposes for which such goods are used'—is implied in any contract for the sale of goods if the seller is a merchant with respect to goods of that kind." Jovine, 795 F. Supp. 2d at 1340 (quoting FLA. STAT. § 672.314). To sustain a claim for breach of implied warranty under Florida law, a plaintiff must allege that: "(1) the plaintiff was a foreseeable user of the product, (2) the product was used in the intended manner at the time of the injury, (3) the product was defective when transferred from the warrantor, and (4) the defect caused the injury." Id. (citing Amoroso v. Samuel Friedland Family, 604 So.2d 827, 833 (Fla. 4th DCA 1992)). Thus, as with a claim of strict liability, to sustain a claim of defective product under a theory of breach of implied warranty of merchantability, "a plaintiff must demonstrate that (1) a defect existed in the product, (2) the defect caused the injury, and (3) the defect in the product existed at the time the product left the possession of the manufacturer." Cooper v. Old Williamsburg Candle Corp., 653 F. Supp. 2d 1220, 1223 (M.D. Fla. 2009).

Defendants[4] argue that "Count III is merely a formulaic recitation of some of the elements in section 672.314" and that "Count III fails to allege any purported defect." Motion at 11.[5] Egbebike does not specifically respond to either of these contentions. See generally Response. Nevertheless, Defendants' Motion is due to be denied with regard to Count Three because Egbebike sufficiently alleges all the elements of a claim of breach of implied warranty of merchantability.

As set forth above, Egbebike has sufficiently alleged that the air mattress was defective. Additionally, Egbebike alleges "[o]n that date that the Product left Defendant, Wal-Mart's, custody and control, the Product would not have passed without objection in the trade and it was not fit for the ordinary purposes for which such Products are used[;]" that Wal-Mart "impliedly warranted that the Product was merchantable[;] that "[a]t all times relevant to this action, the Product was not merchantable, in that the [sic] it was defective and unreasonably dangerous[;]" and that "Defendants' breach of the implied warranty of merchantability caused Plaintiff, Mr. Egbebike, to suffer damages[.]" Amended Complaint ¶¶ 19-22. The Court notes that these particular allegations are, indeed, somewhat conclusory. However, paragraphs

---

[4] One again, although the Motion is filed by both Defendants, only Wal-Mart is named as a Defendant in Count Three.

[5] Under Florida law, "'a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity.'" Jovine, 795 F. Supp. 2d at 1340. In the original Complaint, Egbebike asserted his claim for breach of implied warranty of merchantability against both Defendants. See Complaint ¶ 19-20. In the First Motion to Dismiss the original Complaint, Defendants asserted that the Complaint failed to allege privity between Intex and Egbebike. First Motion to Dismiss at 8-9. Accordingly, in the Amended Complaint, Egbebike omitted the paragraph alleging Intex's liability for this claim. See Amended Complaint ¶¶ 18-22. As indicated by Defendants in the Motion, "[p]aragraph 22 (formerly paragraph 23) nonetheless retains Plaintiff's plural allegation that 'Defendants''breach of the implied warranty caused him injury." Motion at 6. However, since both "Defendants nonetheless accept that Plaintiff has narrowed Count III so as to apply only to Wal-Mart," id., the Court will also accept that Egbebike alleges breach of implied warranty against Wal-Mart only, and not Intex.

5 and 6 of the Amended Complaint, which Egbebike incorporates and re-alleges in Count Three, see Amended Complaint ¶ 18, provide sufficient factual detail to suggest that the air mattress was not fit for the ordinary purpose for which it was to be used, in addition to the other elements of this claim.  Cf. Llado-Carreno, 2011 WL 705403, at *4 (finding that the plaintiff failed to state a claim for breach of implied warranty of merchantability because he alleged no specific facts that would suggest his defibrilator had not served its ordinary purpose or that it did not conform to the container or label that was provided for the product). As such, Egbebike's allegations in Count Three are sufficient to state a claim for breach of implied warranty of merchantability that is plausible on its face.

In accordance with the foregoing, it is hereby **ORDERED**:

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Damages (Doc. 17) is **GRANTED** in part and **DENIED** in part, as follows:

1. The Motion is **GRANTED** to the extent that Count Two of the Amended Complaint is dismissed.

2. In all other respects, the Motion is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, this 7th day of July, 2014.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

lc18

Copies to:

Counsel of Record